**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rhonda Johnson, | No. CV-22-02038-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Rhonda Johnson seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under 42 U.S.C §§ 416(i), 423(d), and 1382c(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 301–2113.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

Plaintiff was born in October 1966.  (Doc. 13-4 at 21).  She was employed as a cashier/checker and an assistant in the floral department.  (*Id.* at 42; Doc. 13-8 at 169). Plaintiff has a high school education.  (Doc. 13-8 at 115).  Plaintiff's impairments include cervical degenerative disc disease, multiple sclerosis, hypothyroidism, status post right knee surgery, and obesity.  (Doc. 13-3 at 16).

On July 23, 2020, Plaintiff applied for disability insurance benefits alleging disability beginning July 4, 2020. (*Id.* at 14). The claim was denied initially on October 7, 2020, and upon reconsideration on March 15, 2021. (*Id.*). On August 25, 2021, she appeared with her attorney telephonically and testified at a hearing before the ALJ. A vocational expert also testified. (*Id.*). On October 19, 2021, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 14, 29). The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. (*Id.* at 2). On November 30, 2022, Plaintiff sought review by this Court. (Doc. 1).

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). "[O]nly issues [that] are argued specifically and distinctly in a party's opening brief are reviewed. *Id*. Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id*.

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir.2005)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" considering the record as a whole. *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.2005)). In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, when the evidence is susceptible to more than one rational interpretation, courts "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).[1]

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that she has not engaged in substantial gainful activity since July 4, 2020 (Doc. 13-3 at 16). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease (DDD), multiple sclerosis (MS), hypothyroidism, status post right knee surgery, and obesity (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.* at 19). At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R.

---

[1] At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *See id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

404.1567(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk with normal breaks for six hours and sit for more than six hours during an eight-hour day. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes or scaffolds. She should not have concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, or poor ventilation. She should not be exposed to extreme heat or hazards such as moving machinery and unprotected heights. (*Id.*).

The ALJ further found that Plaintiff is able to perform past relevant work as a Grocery Clerk and Floral Designer. (*Id.* at 28). At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV. ANALYSIS**

**A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.**

**1. Legal Standard**

For claims filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a) (2017). In considering medical opinions or prior administrative medical findings, the ALJ will consider the following factors: supportability, consistency, relationship between provider and claimant, specialization, and other factors. *Id.* § 40.1520c(a), (c). When considering the relationship between the provider and the claimant, the ALJ considers the length, frequency, purpose, and extent of the treatment relationship. *Id.* § 404.1520c(c)(3)(i)–(iv). Additionally, the ALJ considers whether the provider of the medical opinion actually examined the claimant. *Id.* § 404.1520c(c)(v). Of these factors, supportability and consistency are the most important. *Id.* § 404.1520c(a), (b)(2). The ALJ will articulate the persuasiveness of medical opinions in the case record. *Id.* § 404.1520c(b).

### 2. Discussion

Here, the ALJ did not err in weighing the medical source evidence. Plaintiff challenges the ALJ's weighing of evidence insofar as it affected the ALJ's determination of residual functional capacity—specifically because the ALJ did not provide further limitations for reaching and handling. (Doc. 14 at 10–19). Plaintiff asserts that the ALJ improperly dismissed the medical testimony of "(1) consultative examiner, Erica Neal, PA-C; (2) treating neurologist, David Suber, MD; and (3) primary care provider, Uma Gopakumar, DNP." (*Id.*).

Regarding Ms. Neal, the record indicates that the ALJ did consider her opinion, but found it to be "only partially persuasive and only to the extent it supports the residual functional capacity assessed in [the] decision." (Doc. 13-3 at 26). As such, the ALJ considered much of, but not all, of Ms. Neal's report. For example, it appears that Ms. Neal's finding that grip strength was "four out of five" and "that [Plaintiff] could lift or carry 20 pounds occasionally and 10 pounds frequently" had persuasive effect on the ALJ. (*Id.*). This is further highlighted by the fact the ALJ ultimately accepted Ms. Neal's findings regarding Plaintiff's ability to lift. (*Id.* at 19). The ALJ did not, however, find all of Ms. Neal's opinion persuasive because it was only "partially consistent with medical evidence of record." (*Id.* at 26). The ALJ noted that Ms. Neal's opinion was found to be "overly restrictive without evidentiary foundation" by the state examiner. (*Id.*; Doc. 13-4 at 37). For example, Ms. Neal's opinion was affected by the Plaintiff's self-report of use of a cane and wheelchair despite not having brought the items in for her consultation with Ms. Neal. (Doc. 13-3 at 26). Ms. Neal herself, as well as other medical professionals, found Plaintiff's gait and balance to be normal. (*Id.*; Doc. 18 at 7). The ALJ did not err in weighing Ms. Neal's medical source opinion.

Likewise, the ALJ did not err in finding Dr. Suber's opinion unpersuasive because it was inconsistent with medical evidence of record. (Doc. 13-3 at 25–26). Dr. Suber found that Plaintiff had more substantial physical limitations than the other medical evidence of record showed. (*Id.* at 25). That medical evidence was that Plaintiff had

normal gait, could stoop without difficulty, lacked certain skeletal defects, had a range of motion within normal limits, and could lift her feet without pain. (Doc. 13-8 at 56, 116-17). The ALJ also found Dr. Suber's opinion to be inconsistent because the Plaintiff had engaged in gainful employment—which required exertion beyond Dr. Suber's stated limitations—for years. (*Id.* at 25). The ALJ's finding that Dr. Suber's opinion was inconsistent is supported by the evidence and, thus, the ALJ did not err by discounting it.

Finally, the ALJ also found Uma Gopakumar's opinion evidence to be internally inconsistent. (*Id.* at 23–25). As with Dr. Suber, the ALJ found Ms. Gopakumar's opinion to be internally inconsistent because she specified that Plaintiff had substantial limitations starting in 2015, but Plaintiff had been able to successfully complete work beyond those limitations. (*Id.* at 24). Additionally, the ALJ identified that Ms. Gopakumar only ever specifically "released" from work based on her elevated risk of COVID-19, rather than any specific limitations. (*Id.* at 23–24; Doc. 13-8 at 64, 95). As with her analysis of Dr. Suber's opinion, the ALJ did not err in discounting Ms. Gopakumar's opinion.

The record indicates that the ALJ weighed and considered the testimony of Ms. Neal, Dr. Suber, and Ms. Gopakumar, but ultimately found each opinion to be of limited persuasive value because of inconsistency internally and with the larger medical record. Further, the ALJ articulated the persuasiveness of each of these medical opinions. Accordingly, the ALJ did not err in considering these three opinions.

**B.     The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.**

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *4 (March 16, 2016), *amended by* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Then the ALJ must make a finding on the intensity, persistence, and limiting effects of claimant's symptoms. *Id.*

In evaluating the intensity, persistence, and limiting effects of a Claimant's symptoms, the ALJ will consider a set of 7 factors in addition to all the existing evidence:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7–8. The ALJ will only discuss those factors made relevant by the evidence. *Id.* at *8. A claimant's statements about his own symptoms will weight in this analysis based on their consistency with the record: statements consistent with the record indicate Claimant's symptoms are more likely to reduce capacity to perform work-related activities, while inconsistent statements indicate the opposite. *Id.*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-3 at 28). Second, the ALJ found Plaintiff's "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). Plaintiff alleges the ALJ erred in this determination because the ALJ discounted the Plaintiff's own symptom testimony. (Doc.

14 at 5–10). Specifically, Plaintiff alleges the ALJ erred in not adhering to Plaintiff's explanation of her "upper extremity symptoms and difficulty when using her hands." (*Id.* at 5). The ALJ did not err, however, and provided clear and convincing reasons for discrediting Plaintiff's symptom testimony.

First, the ALJ explained that Plaintiff's symptom testimony was inconsistent with the record of her prior work and daily activities. As the ALJ noted throughout, the alleged severity of Plaintiff's symptoms, which started in 2015, are inconsistent with her substantial work history. (Doc. 13-3 at 24). Plaintiff alleged her symptoms had been occurring for years, during which Plaintiff was gainfully employed. (*Id.* at 50). Additionally, Plaintiff's daily tasks further undermine the reliability of her symptom testimony. In July and November of 2020, Plaintiff explained she could drive, mop, dust, do laundry, shop, do dishes, and care for pets. (Doc. 13-7 at 13, 30–31).

Furthermore, Plaintiff's 2020 medical records indicated her medical conditions were mild and manageable when compared to Plaintiff's symptom testimony. A 2019 radiology report indicated "[s]table mild T2 and minimal T1 burdens" of MS. (Doc. 13-8 at 57-58). Additionally, substantial medical evidence indicates Plaintiff's upper and lower extremity strength had been 4/5 or 5/5 throughout the relevant period. (Doc. 13-4 at 27, 40–41; Doc. 13-8 at 20–21, 35, 40, 117, 165). Finally, the medical evidence of record indicates that Plaintiff's symptoms were generally under control when using prescribed medications. (*Id.* at 120).

Based on Plaintiff's work history, daily tasks, and medical evidence, the ALJ did not err in discrediting Plaintiff's symptom testimony.

**C.    The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity.**

A residual functional capacity finding involves a detailed assessment of how a claimant's medical impairments affect her ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of [] symptoms,

including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96–8p, 1996 WL 374184, *5 (July 2, 1996)). The ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). A plaintiff's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir.1985)).

The ALJ did not err in determining Plaintiff's residual functional capacity. The ALJ provided a narrative description of how the evidence supports each conclusion in the residual functional capacity assessment and explained any inconsistencies or ambiguities in the evidence. See SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). As explained above, the ALJ provided reasons for her disagreement with portions of the medical opinion evidence. The ALJ incorporated those medical assessments that she found credible. The ALJ is not required to consider properly discounted evidence, including discredited symptom testimony and discounted medical assessments. As explained above, the ALJ did not err is discounting Plaintiff's symptom testimony or certain medical testimony. In crafting Plaintiff's residual functional capacity, the ALJ properly relied on all other submitted evidence. Despite Plaintiff's argument to the contrary, the ALJ's assessment finds substantial support in the medical opinion evidence.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly and shall terminate this case.

Dated this 20th day of May, 2024.

_____
G. Murray Snow
Chief United States District Judge